IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| DIANE C. SMITH, | : |
| Plaintiff, | : Civil No. 19-16829 (RBK/KMW) |
| v. | : **OPINION** |
| G2 SECURE STAFF, LLC, *et al.*, | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant G2 Secure Staff, LLC's ("G2") Motion to Transfer Venue to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). (Doc. 10). For the reasons expressed herein, G2's motion is GRANTED.

**I.    BACKGROUND**

On August 18, 2017, Plaintiff Diane Smith was traveling through Los Angeles International Airport ("LAX"). (Doc. 1 ("Compl.") at 3.) Because Plaintiff was using a wheelchair, she sought assistance from Defendant G2, a company that contracts with American Airlines to provide ADA assistance to passengers. (*Id.*) Two G2 staff members ultimately assisted Plaintiff. (*Id.*) The first employee pushed Plaintiff's wheelchair to a shuttle stop, where Plaintiff claims the employee planned to leave her unattended, rather than helping her to her intended destination.

The second G2 staff member—later identified as Wilbert Beyard—then intervened, and resumed pushing Plaintiff's wheelchair through LAX. (Compl. at 3; Def. Mot. at 4.) During this

1

walk, Plaintiff alleges that Mr. Beyard "improperly handled the wheelchair" and "missed a curb," causing Plaintiff to be thrown from the wheelchair and land on the concrete. (Compl. at 3–4.) Defendant G2 has since terminated Mr. Beyard's employment, claiming that he was acting outside the scope of his employment in "direct violation of G2's policies and procedures," since he was not permitted to assist in transporting passengers. (Def. Mot. at 4; Doc. 10-5 at 34.)

As a result of this incident, Plaintiff alleges that she injured her knees, hips, and right hand. (Compl. at 3–4.) She states that she required hospital treatment and physical therapy, developed neuropathy in her right hand due to the impact from the fall, and has issues sleeping due to pain. (*Id*.) She alleges that this incident caused depression and a decline in her quality of life, and that she now requires adaptive changes to her home and assistance with daily functions. (*Id*. at 4.)

Plaintiff contacted several individuals to complain of the incident, including the Coordinator for Disability Services at LAX and American Airlines Risk Management. (Compl. at 3; Pl. Resp. at 13–20.) Unsatisfied with the response from these entities, Plaintiff filed this suit *pro se* against G2 and American Airlines in August 2019. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as Plaintiff is a citizen of New Jersey, and both Defendants are citizens of Texas. (Compl. at 3.)

With American Airlines' consent, Defendant G2 now moves to transfer venue to the Central District of California pursuant to 28 U.S.C. § 1404(a). (Doc. 10, "Def. Mot.") Plaintiff opposes this motion, arguing that litigation should remain in New Jersey. (Doc. 22, "Pl. Resp.")

## II.   LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In contrast to

transfer of venue under 28 U.S.C. § 1406, where the court finds the original venue improper, transfer of venue is done under § 1404(a) "for the convenience of the parties even if the court finds that the original venue is proper." *Ferratex, Inc. v. U.S. Sewer & Drain, Inc.*, 121 F. Supp. 3d 432, 436 (D.N.J. 2015).

The decision whether to transfer an action pursuant to § 1404(a) is within the Court's discretion and is reviewed for abuse of discretion. *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 872 (3d Cir. 2013); *Lepre v. Lukus*, 602 F.App'x. 864, 868 (3d Cir.), *cert. denied*, 135 S. Ct. 1858 (2015). The party seeking transfer of venue bears the burden of establishing that transfer is warranted and must submit "sufficient information in the record" to facilitate the Court's analysis. *Hoffer v. InfoSpace.com, Inc.*, 102 F. Supp. 2d 556, 572 (D.N.J. 2000). Before transferring venue, the Court must articulate specific reasons for its decision. *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 451 (D.N.J. 1999).

Under 28 U.S.C. § 1404(a), the court must take into account a wide range of public and private interests when determining if a transfer to a new venue is appropriate. The Third Circuit has identified the following private factors as being significant to the § 1404(a) analysis:

> [1] [P]laintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted). Among the public factors that courts consider are the following:

> [1] [T]he enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in

3

>   deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id*. at 879–80 (citations omitted).

The movant bears "[t]he burden of establishing the need for transfer," and "the plaintiff's choice of venue should not be lightly disturbed." *Id*. at 879 (internal quotations omitted). "[U]nless the balance of convenience of the parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail." *Shutte v. Amco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (quoting *Owatonna Mfg. Co. v. Melroe Co.*, 301 F. Supp. 1296, 1307 (D. Minn. 1969)).

### III.  DISCUSSION

Because the parties do not dispute the fact that Plaintiff could have brought this case in the Central District of California, the question is thus whether Defendant has met its burden of establishing that the weight of private and public factors are strongly in favor of transfer.

#### A.  Private Factors

##### *The parties' forum preferences*

A plaintiff's forum choice generally is entitled to deference. *See Jumara*, 55 F.3d at 880. However, when the central dispute in a lawsuit arose from events that occurred exclusively in another forum, as is the case here, courts give substantially less weight to the plaintiff's forum choice. *See Goldstein v. MGM Grand Hotel & Casino*, Civ. No. 15-4173, 2015 WL 9918414, at *2 (D.N.J. Nov. 5, 2015) (finding that "the plaintiff's choice of forum is discounted significantly where the case has little connection with the chosen forum, and the nucleus of operative facts occurred elsewhere") (internal quotations omitted); *see also Foster v. Marriott Resort Hosp. Corp.*, Civ. No. 17-12901, 2018 WL 3360763, at *2 (D.N.J. July 10, 2018) (noting that "[t]his court has frequently disregarded a plaintiff's preferred venue when New Jersey has little connection to the operative facts").

Here, while Plaintiff clearly prefers to litigate in New Jersey, the events giving rise to this suit occurred solely in California. Plaintiff's forum choice is thus given substantially less deference. The second factor, defendant's preference, weighs in favor of transfer, as Defendant prefers the Central District of California.

### *Where the claim arose*

Similarly, because Plaintiff's claim arose from events that occurred entirely in California, this third factor weighs in favor of transfer. *See Mancini v. Benihana Nat. Corp.*, Civ. No. 13-03167, 2013 WL 6147808, at *2 (D.N.J. Nov. 22, 2013) ("That the operative facts giving rise to the action occurred in another district weighs in favor of transfer.")

### *Convenience of the parties*

The fourth factor—convenience of the parties—weighs against transfer. Plaintiff argues that her severe migraines cause her to require hourly assistance while traveling. (Pl. Resp. at 5.) She states that, if required to travel to California for hearings or depositions, paying for such assistance would be extremely expensive. (*Id.*) She also notes that she attends weekly support group meetings for her post-traumatic stress disorder, and is currently receiving pain management and attending physical therapy in Philadelphia. (*Id.* at 5–6.) She argues that Defendant, as a national corporation with relatively vast financial and legal resources, is in a better position to bear the burden of cross-country litigation. (*Id*. at 5–6, 8.)

Defendant concedes that it is "more financially able than Plaintiff to litigate," but argues that California nonetheless presents the most convenient location for all parties because it is where Plaintiff's injury arose and where all witnesses and evidence are present. (Def. Br. at 7; Doc. 24 ("Def. Reply") at 3–4.)

5

Because Defendant is in a far superior position financially, and because of Plaintiff's alleged health issues, this factor weighs against transfer. However, this factor "is not determinative," and must be balanced against the other private and public factors. *See Mancini*, 2013 WL 6147808, at *4 (finding that, though the "[d]efendant's access to resources weigh against transfer," this factor "is not determinative," particularly where witnesses might be unavailable in the plaintiff's preferred forum).

### *Convenience of witnesses*

The fifth factor—convenience of witnesses—weighs in favor of transfer. "Transfer is favored where the most pertinent witnesses will be found in the transferee district." *Mancini*, 2013 WL 6147808, at *3 (citing *Schwilm v. Holbrook*, 661 F.2d 12, 15 (3d Cir. 1981)).

As Defendant points out, other than Plaintiff, the only known eyewitness to the underlying incident is Mr. Beyard, the G2 employee who was pushing Plaintiff's wheelchair. (Def. Reply at 5.) Defendant asserts that Mr. Beyard, who resides in Los Angeles, "is an integral witness to both the defense and prosecution of this case." (Def. Mot. at 7; Def. Reply at 5.) Because Mr. Beyard resides in Los Angeles, this Court lacks the power to subpoena him. *See* Fed. R. Civ. P. 45(c)(1)(a) ("A subpoena may command a person to attend a trial, hearing, or deposition only . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person.") Additionally, Defendant cannot compel Mr. Beyard to appear, as he is no longer a G2 employee. (Def. Mot. at 7.) In contrast, Plaintiff does not identify any witnesses who would be unavailable to testify if this case were transferred to California, and instead argues that the unavailability of one witness should not decide this motion. (Pl. Resp. at 7.)

Despite Plaintiff's argument that Mr. Beyard is only a single witness, his testimony is likely key to the liability issues in this case, yet this Court is unable to compel his presence. Accordingly,

this factor weighs strongly in favor of transfer. *See Mancini*, 2013 WL 6147808, at *3 (D.N.J. Nov. 22, 2013) (granting transfer from New Jersey to Colorado when none of the "witnesses identified by [d]efendant that could testify as to the [underlying issues in the case] would be within the Court's subpoena power in New Jersey").

### *Location of books and records*

The final private factor—location of books and records—weighs in favor of transfer. Defendant argues that custodians of records at LAX cannot be compelled by this Court to testify or to produce records. (Def. Mot. at 7–8.) Defendant also argues that its defense involves inspecting the curb area where Plaintiff was injured, in order to determine whether the site itself, rather than any alleged negligence, contributed to Plaintiff's fall. (*Id.*) It argues that, if any non-party California companies have repair or maintenance records regarding the curb area, or if some entity has other evidence that the curb was defective, this Court cannot compel production of those records. (Def. Mot. at 8; Def. Reply at 6.) Defendant further claims that the site itself is evidence, and argues that it would be more practical to have expert engineers based in California inspect the site and testify at trial there, rather than having to fly across the country to testify. (Def. Mot. at 8.)

Plaintiff argues that the only records necessary for trial can be sent electronically and are likely self-authenticating, and would not require the testimony of a records custodian. (Pl. Resp. at 7.) She also argues that inspection of the curb is unnecessary. (Pl. Resp. at 7–8.)

While most evidence could likely be sent to New Jersey electronically, and thus the distance would not present any significant hurdle, the fact remains that any non-party evidence remains in California, outside the subpoena power of this Court. *See* Fed. R. Civ. P. 45(c)(2) ("A subpoena may command . . . production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly

transacts business in person"). Further, the Court cannot definitively declare the incident site or records pertaining to it to be irrelevant, as Plaintiff seems to request, as there may exist the possibility that the site itself was a cause of Plaintiff's injury. Accordingly, as the evidence and site to be inspected are located in California, this factor weighs in favor of transfer.

Thus, the only private factor truly weighing against transfer is convenience of the parties. However, as noted above, a plaintiff's difficulties with finances or health is generally insufficient to outweigh all other private factors, particularly where a plaintiff's desired forum has no relation to the cause of action. *See, e.g., Skyers v. MGM Grand Hotel LLC*, Civ. No. 14-4631, 2015 WL 1497577, at *3 (D.N.J. Apr. 1, 2015) (granting a transfer from New Jersey to Nevada, stating, "[t]he Court acknowledges the *pro se* plaintiffs' argument concerning their choice of forum, as well [as] the superior financial status of defendant and its presumptive ability to absorb the costs of traveling. . . The financial inequity of the parties, however, cannot override all the other factors in this case."); *Green v. Desert Palace, Inc.*, Civ. No. 10-908, 2010 WL 1423950, at *2 (D.N.J. Apr. 8, 2010) (transferring case from New Jersey to Nevada after finding that the majority of factors favored transfer, despite Plaintiff's ongoing medical treatment in New Jersey and her claim that she was "in no position emotionally, physically or financially" to travel for litigation).

### B. Public Factors

Addressing the public interest factors next, the Court finds that these similarly weigh in favor of transfer.

*Practical considerations and enforceability of judgments*

Defendant argues that litigating this case in New Jersey could create duplicative litigation, because Plaintiff could later bring a negligence claim against Mr. Beyard in California since he is not subject to suit in New Jersey. (Def. Mot. at 8.) As Plaintiff points out, this argument is

8

unavailing: the applicable statute of limitations—two years—prevents Plaintiff from bringing a separate suit against Mr. Beyard. (Pl. Resp. at 8.) The parties also debate the practical costs of litigating in either forum: Defendant claims that litigating in New Jersey will create added costs of transporting any witnesses, experts, or evidence across the country, while Plaintiff responds that any costs incurred by transporting people or materials from California to New Jersey is "the cost of engaging in a national business" that Defendant, as a national corporation, should expect. (Def. Mot. at 8; Pl. Resp. at 8.)

As addressed in the private factor section above, litigating in California will certainly make the trial more expensive for Plaintiff, while litigating in New Jersey will make gathering evidence and witnesses more difficult. On balance, the practical considerations factor does not weigh in either direction.

### *Judicial economy*

As most recently reported, the District of New Jersey has 32,019 pending cases, while the Central District of California has 10,767 pending cases. *See* U.S. Courts, Federal Judicial Caseload Statistics tbl. C (March 31, 2019), https://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2019/03/31. Considering the relative court congestion and administrative difficulty between fora, this factor weighs in favor of transfer.

### *Local interest and public policies of the fora*

"Courts have an interest in deciding local controversies, and consequently, when an action involves injuries sustained in a particular locale, the public interest supports adjudication of the controversy in that locale." *Mancini*, 2013 WL 6147808, at *4 (internal quotations omitted). Because the incidents giving rise to this case occurred solely in California, it has a stronger local interest in this litigation than does New Jersey, as its only connection to the litigation is that

9

Plaintiff is a New Jersey resident. "Although New Jersey may harbor a valid interest in protecting its citizens when they travel abroad, 'the burden of jury duty is more fairly placed on the [local] residents . . . who maintain an interest in resolving disputes which arise from accidents happening within their borders.'" *Mancini*, 2013 WL 6147808, at *4 (quoting *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 201 (E.D.Pa. 2008). Accordingly, this factor weighs in favor of transfer.

### *Familiarity with the applicable state law in diversity cases*

Because California tort law would apply to this case, as LAX was the site of Plaintiff's injury, this final factor also weighs in favor of transfer. *See, e.g., Foster,* 2018 WL 3360763, at *3 (considering motion to transfer from New Jersey to Florida and finding that, "while a district court sitting in diversity is able to interpret any state's law, a Florida court will be more familiar with Florida negligence law"); *Goldstein,* 2015 WL 9918414 at *5 (noting that, "while this Court has the wherewithal to apply" another state's law, a district court within the applicable state is "certainly more likely to have a better knowledge of [that state's] tort law").

## IV.  CONCLUSION

Considering that all public interest factors are either neutral or weigh in favor of transfer, and that the majority of private interest factors weigh in favor of transfer, this Court finds that transfer to the Central District of California is appropriate.

Most notably, the incident occurred solely in California, the alleged individual tortfeasor—and perhaps the only eyewitness—resides in California outside of this Court's subpoena power, the injury site to be inspected is located in California, and California law will apply to this litigation. In contrast, the only factor weighing in favor of litigating in New Jersey is convenience to Plaintiff.

While the Court does not seek to minimize the difficulty that an individual plaintiff faces when litigating in a distant forum, particularly here where Plaintiff proceeds *pro se* and receives her medical treatment in New Jersey, the decision to transfer ultimately cannot rest on this factor alone. As this Court recently noted, "[t]his District has routinely transferred similar cases, and our case law favors transfer . . . under these circumstances. Subsequent medical treatment in New Jersey for injuries that occurred in other venues is not dispositive when the injury underlying the claim occurred in another state." *Foster,* 2018 WL 3360763 at *3 (collecting cases in which transfer to a distant venue was granted despite the defendant's superior financial status and the plaintiff's financial difficulties); *see also Goldstein*, 2015 WL 9918414, at *3 (transferring case from New Jersey to Nevada despite the plaintiff's claim "that she does not have the economic means to litigate her case in the District of Nevada due to the financial strain resulting from her injuries," as the majority of other factors weighed in favor of transfer); *Skyers, 2015 WL 1497577* at *3 (transferring from New Jersey to Nevada despite plaintiffs' *pro se* status and financial difficulty); *Gambil v. Wal-Mart Stores, Inc.*, Civ. No. 08-4297, 2009 WL 90137, at *2 (D.N.J. Jan. 12, 2009) (granting transfer from New Jersey to New Mexico despite the plaintiff's continued medical treatment in New Jersey and relative financial hardship, after finding that all other factors weighed in favor of transfer).

Accordingly, Defendant's motion to transfer (Doc. 10) is GRANTED. An accompanying Order shall issue.

Dated:  5/18/2020                                                            /s/ Robert B. Kugler
                                                                                                                       ROBERT B. KUGLER
                                                                                                                       United States District Judge